UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-CV-81117-KAM

PAUL MULLER, individually and on behalf
of others similarly situated,

       Plaintiff,

vs.

MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT,
INC.

       Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on Defendants' Motion to Dismiss Plaintiff's Class Action Complaint.  (DE 19).  Plaintiff responded (DE 24), and Defendants replied (DE 25).  The motion is ripe for review, and for the following reasons, the Court concludes that it should be granted in part and denied in part.

### I.  Background

This is an action under the Fair Debt Collection Practices Act (FDCPA) against Defendants Midland Funding, LLC, (Midland) and Midland Credit Management, Inc. (MCM). (DE 1).  Plaintiff alleges that Defendants violated several provisions of the FDCPA by sending him written communications on November 25, 2013, and again on January 4, 2014.

In Count I, Plaintiff alleges that Defendants violated § 1692g of the FDCPA (15 U.S.C. § 1692g).  (Id. ¶¶ 48-50).  Specifically, Plaintiff alleges that Defendants communicated with him for the first time by sending him a letter on November 25, 2013.  (Id. ¶¶ 24-25).  He attaches a

copy of the letter to his complaint.[1]  (DE 1-1).  The body of that letter reads as follows:

> RE: GE Money Bank / Brooks Brothers
>
> Dear Paul,
>
> The purpose of this letter is to advise you that Midland Funding
> LLC is the new owner of the above-referenced account, and
> Midland Credit Management, Inc. ("MCM"), a debt collection
> company, is now the servicer of this obligation.  Midland Funding
> LLC received an assignment of your account with the above-listed
> original creditor.  Accordingly, all future communication regarding
> the account should be addressed to MCM as servicer for Midland
> Funding LLC and not the previous owner.  No collection efforts
> will occur on this account for at least 30 days from the date of this
> notice.
>
> If an attorney represents you with regard to this debt, please refer
> this letter to your attorney.  Likewise, if you are involved in an
> active bankruptcy case, or if this debt as been discharged in a
> bankruptcy case, please refer this letter to your bankruptcy attorney
> so that we may be notified.
>
> Midland Credit Management, Inc.
> 8875 Aero Drive, Suite 200
> San Diego, CA 92123

(DE 1-1 at 2).  Below this language, in italic print, was the following statement:

> *Federal law prohibits certain methods of debt collection, and*
> *requires that we treat you fairly.  You can stop us from contacting*
> *you by writing a letter to us that tells us to stop the contact or that*
> *you refuse to pay the debt.  Sending such a letter does not make the*
> *debt go away if you owe it.  Once we receive you letter, we may not*
> *contact you again, except to let you know that there won't be any*
> *more contact or that we intend to take a specific action.*
>
> *If you have a complaint about the way we are collecting this debt,*
> *please [write us or call us at the address or number listed].*

---

[1]  As such, it may be considered on a motion to dismiss.  <u>See</u> <u>Brooks v. Blue Cross &</u>
<u>Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1369 (11th Cir. 1997).

> *The Federal Trade Commission enforces the Fair Debt Collection*
> *Practices Act (FDCPA).  If you have a complaint about the way we*
> *are collecting your debt, please contact the FTC [online, by phone,*
> *or by mail].*

(Id.).  The reverse side of the letter provided "Important Disclosure Information."  (Id. at 3).

Circled at the top of the page was the following statement:  "This communication is from a debt

collector, this is not an attempt to collect a debt."  (Id.).  Next, the page stated that "[c]alls to

and/or from this company may be monitored or recorded" and stated:

> **MAIL PAYMENTS TO:** P.O. Box 60578, Los Angeles, CA
> 90060-0578
>
> **MAIL CORRESPONDENCE BUT NO PAYMENTS TO:** 8875
> Aero Drive, Suite 200, San Diego, CA 92123

(Id.) (bold, all caps, and underline in letter).  The remainder of the reverse side of the page

provided information pertinent to consumers residing in certain states.  Regarding Colorado

residents, it was stated on the reverse side of the page that MCM has a physical office in

Broomfield, Colorado, and "[o]nly physical in-person payments may be accepted at this office

location.  All payments made via mail should be sent to the" P.O. Box in Los Angeles.  (Id.).

Plaintiff alleges that the November 25, 2013 letter (the "2013 Letter") was an initial

written communication from a debt collector sent in connection with the collection of a debt.  (Id.

¶¶ 24-25, 31, 48-49).  Because the 2013 Letter did not include the debt-validation disclosures

required by § 1692g of the FDCPA, Plaintiff seeks damages on behalf of himself and a class in

Count I of his complaint.  (Id. ¶ 50).

In addition to the 2013 Letter, Counts II and III concern the January 4, 2014 written

communication.  (Id. ¶¶ 54, 59).  Specifically, Plaintiff alleges that Defendants sent him a letter

on January 4, 2014 (the "2014 Letter") stating that he owed Defendant Midland Funding LLC $3,603.35 on a "GE Money Bank / Brooks Brothers" account.  (Id. ¶ 35; see also DE 1-2).  The 2014 Letter offered Plaintiff three payment options and advised that it was "an attempt to collect a debt."  (DE 1-2 at 2-3).  Plaintiff alleges that he has never used a "GE Money Bank / Brooks Brothers" credit card, has never shopped at a Brooks Brothers store, and therefore never owed Defendants any debt.  (Id. ¶¶ 36-38).  He alleges that Defendants informed him on March 3, 2014, that they had instructed the major credit reporting agencies to delete the GE Money Bank / Brooks Brothers account from his credit file.  (Id. ¶ 39).  In Count II, Plaintiff alleges that Defendants, through the 2013 Letter and 2014 Letter, violated § 1692e(2)(A) of the FDCPA by falsely representing the "character, amount, or legal status" of a debt that did not exist.  (Id. ¶ 56).  In Count III, Plaintiff alleges that Defendants, through the 2013 Letter and 2014 Letter, violated § 1692e(10) of the FDCPA by using a false representation or deceptive means to collect a debt that did not exist.  (Id ¶ 61).

Defendants move to dismiss for failure to state a claim.  (DE 19).  First, Defendants argue that the 2013 Letter is exempt from the requirements of the FDCPA because it was not a communication sent "in connection with the collection of any debt."  (Id. at 6).  Second, Defendants argue that Plaintiff cannot sue for FDCPA violations based on false representations within the 2014 Letter because he did not first challenge the validity of the debt described in that letter as provided by § 1692g.  (Id. at 12-14).  The Court takes each argument in turn.

## II.  Discussion

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds

on which it rests.  Fed.R.Civ.P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked by a  Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.  The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

The FDCPA "establishes a strict liability standard; a consumer need not show [an] intentional violation of the Act by a debt collector to be entitled to damages." Carbonell v. Weinstein Pinson & Riley, P.S., No. 14-cv-20273, 2014 WL 2581043, at *3 (S.D. Fla. 2014) (quoting Castro v. A.R.S. Nat'l Servs., Inc., 2000 WL 264310, at * 2 (S.D.N.Y. 2000)).  To state a claim under the FDCPA, a plaintiff must demonstrate (1) he has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector under the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. Sanz v. Fernandez, 633 F. Supp. 2d 1356, 1359 (S.D. Fla. 2009).

**A.**      **Whether the 2013 Letter was in Connection with the Collection of a Debt**

Plaintiff alleges that Defendants violated § 1692g of the FDCPA by sending him the 2013 Letter.  (DE 1 at 9).  That section requires a debt collector to provide certain debt-validation disclosures "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt."  15 U.S.C. § 1692g.  Whether Defendants were required to do so in this case turns on whether the 2013 Letter was sent "in connection with the collection of any debt."  The parties agree that this determination is governed by an objective standard, measured through the eyes of "the least sophisticated consumer."  (DE 19 at 6; DE 24 at 6).

The least-sophisticated consumer standard recognizes that the FDCPA was enacted to "grant consumers <u>more</u> protection" than previously existing federal consumer-protection laws. <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1194 (11th Cir. 2010)(emphasis in the original).  "However, the test has an objective component in that while protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness." <u>Id.</u> (internal quotation marks, citations, and alterations omitted).  "The least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." <u>Id.</u>  The test assumes that a communication "is read in its entirety, carefully and with some elementary level of understanding." <u>Anselmi v. Shendell & Assocs., P.A.,</u> No. 12-61599-CIV, 2014 WL 5471111, at *2 (S.D. Fla. Oct. 29, 2014).

No court has established a bright-line rule for determining whether a communication from a debt collector was made "in connection with the collection of any debt." <u>See</u> <u>Gburek v. Litton Loan Servicing LP</u>, 614 F.3d 380, 384 (7th Cir. 2010).  Rather, most district courts

analyzing the issue turn to decisions from the Seventh Circuit—and increasingly, decisions from the Sixth Circuit—for guidance with respect to the relevant factors.  See Parker v. Midland Credit Mgmt., 874 F. Supp. 2d 1353, 1356 (M.D. Fla. 2012) (citing Gburek, 614 F.3d 380, and Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011)); see also (DE 24 at 7) (Plaintiff citing Gburek, 614 F.3d at 385-86, for relevant factors).

In addition to considering whether the "animating purpose" of a communication is to induce the debtor to settle his debt, see Grden, 643 F.3d at 173 (citing Gburek, 614 F.3d at 385), courts consider the following factors: (1) whether the communication expressly demanded payment or stated a balance due; (2) whether the communication stated that it was an attempt to collect a debt or threatened consequences should the debtor fail to pay; and (3) the nature of the relationship of the parties.  See Goodson v. Bank of Am., N.A., — F. App'x —, slip op. at 13 (6th Cir. Jan. 28, 2015); see also Gburek, 614 F.3d at 385-86.  The Court will discuss these factors as they relate to the 2013 Letter.

### 1.    Animating Purpose of the 2013 Letter

First, a review of the language and structure of the 2013 Letter shows that it was sent to inform Plaintiff about the assignment of his purported debt to Defendants rather than to induce a payment.  The letter opened, "The purpose of this letter is to advise you that Midland Funding LLC is the new owner of the above-referenced account, and Midland Credit Management, Inc., a debt collection company, is now the servicer of this obligation."[2]  (DE 1-1 at 2) (emphasis

---

[2]  Defendants note that a notice of assignment is required under the Florida Consumer Collection Practices Act (FCCPA).  (DE 19 at 7) (citing Fla. Stat. § 559.715).  The fact that the letter was sent in compliance with the FCCPA does not afford Defendants a safe harbor from FDCPA liability.  See Parker, 874 F. Supp. 2d at 1356.  Defendants do not argue that it does. (DE 19 at 7).

added).  The letter informed Plaintiff of the assignment of his debt to Defendant Midland, and it directed him to address "future communication" to the new servicer, Defendant MCM.  (Id.). The body of the letter neither mentioned payment nor an outstanding balance, and indeed stated that "[n]o collection efforts will occur on this account for at least 30 days."  (Id.).  These direct statements about the letter's "purpose"—written in complete sentences within the body of the letter—are a strong indicator of Defendants' animating purpose in sending the 2013 Letter.

Below the signature line and in italics, the letter informs Plaintiff about the FDCPA and that he may "complain[] about the way we are collecting your debt."[3]  (Id.).  Standing alone, the fact that the letter identified Defendants as debt collectors and informed Plaintiff that he may complain about Defendants' collection practices does not indicate that the underlying purpose for the 2013 Letter was to induce Plaintiff to make a payment, rather than to inform him of the new relationship stemming from the assignment of his debt.  See Goodson, — F. App'x —, slip op. at 15 (bold statement that sender was "a debt collector attempting to collect a debt" did not transform informational letter into "debt collection activity"); Hart v. FCI Lender Servs., Inc., No. 13-CV-6076 CJS, 2014 WL 198337, at *2 (W.D.N.Y. Jan. 15, 2014) (all caps statement that "this is an attempt to collect upon a debt" did not render letter, which was "informational in

_____

[3]  Plaintiff tends to focus on the phrase "we are collecting your debt" rather than the entire sentence, "If you have a complaint about the way we are collecting your debt, please contact the FTC . . . ."  (DE 24 at 8, 9, 12).  The least-sophisticated consumer standard "assumes that a [communication] is read in its entirety, carefully and with some elementary level of understanding."  Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007) (quoting In re Martinez, 266 B.R. 523, 532 (Bankr. S.D. Fla. 2001)); see also Anselmi v. Shendell & Assocs., P.A., No. 12-61599-CIV, 2014 WL 5471111, at *2 (S.D. Fla. Oct. 29, 2014).  Accordingly, the Court "must examine each communication as a whole, and not by looking to each sentence [or piece of a sentence] individually because even the least sophisticated debtor is bound to read collection notices in their entirety."  Id. (internal quotation marks omitted, and alteration added).

8

nature," debt collection activity). Taking the care to read the entire letter, it seems even less likely that including language about "complaint[s] about the way we are collecting your debt" was an implicit effort to induce a payment (and possible complaint), as the letter directly stated that "collection efforts" would not begin "for at least 30 days."

The "Important Disclosure Information" on the reserve of the letter included the addresses where Plaintiff could "mail payments" and "mail correspondence but no payments." (DE 1-1 at 3). Standing alone, the disclosure of these addresses does not indicate that the 2013 Letter's overall purpose was to induce an immediate payment rather than to inform Plaintiff where payments should eventually be sent. See Hart, 2014 WL 198337, at *6 (fact that letter provided address where debtor "should mail your payments," which were currently due, did not render "informational" letter debt collection activity). Viewed in the context of the whole letter—which neither mentioned "payments" on its front nor stated a balance due anywhere—it seems clear that the 2013 Letter's purpose was not to induce a payment from Plaintiff by including mailing addresses among other disclosure information on the back of the letter.

Objectively considering its content and structure, the animating purpose of the 2013 Letter was to inform Plaintiff of the assignment of the purported debt to Defendants.[4] The fact

----

[4] Plaintiff argues that the "true purpose of Defendants' November 25, 2013 letter was to solicit—directly or indirectly—the payment of monies on an alleged debt." (DE 24 at 11). In support, Plaintiff cites cases holding that pre-recorded phone and voice mail messages are "communications" within the meaning of § 1692a(2) of the FDCPA because they are means of "conveying . . . information regarding a debt directly or indirectly to any person through any medium." (DE 24 at 11) (citing Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 658 (S.D.N.Y. 2006)). In this case, there is no dispute that the 2013 Letter was a "communication" under § 1692a(2), as it certainly conveyed information "regarding a debt." The specific issue presented—and unaddressed by Plaintiff's cases (DE 24 at 11-12)—is whether that communication was sent "in connection with the collection" of that debt. See 15 U.S.C. § 1692g(a). Plaintiff does not objectively analyze the content and context of the 2013 Letter in

that the letter was information weighs in favor of finding that it was not sent "in connection with the collection of any debt."  <u>See, e.g.</u>, <u>Goodson</u>, — F. App'x —, slip op. at 15; <u>Hernandez v. Dyck-O'Neal, Inc.</u>, No. 3:14-CV-1124-J-32JBT, 2015 WL 2094263, at *3 (M.D. Fla. May 5, 2015) (striking claims with prejudice because letter "stated that it was <u>not</u> an attempt to collect a debt" and "was merely informational because it informed [plaintiff] of the assignment of debt"); <u>Shelley v. Ocwen Loan Servicing, LLC</u>, No. 1:13-CV-506-RLY-DKL, 2013 WL 4584649, at *7 (S.D. Ind. Aug. 28, 2013) (dismissing complaint where letter describing transfer of "the right to collect payments from you" was "clearly informational—it alerts Plaintiffs that their account has been transferred to Ocwen and provides Ocwen's contact information").

### 2. Express Demand for Payment or Stated Balance Due

The 2013 Letter contained neither an express demand for payment nor stated a balance due.  The statement that collection would not begin "for at least 30 days" is the opposite of a current, express demand for payment.  Although the letter informed Plaintiff of a purported "GE Money Bank /Brooks Brothers" account and where to "mail payments," the letter did not inform Plaintiff of the balance he owed, and it did not inform him how much of an initial payment he should mail in response to receiving the letter.  It seems "axiomatic that for a demand of money to be made, the recipient of the demand must be informed what amount is owed."  <u>Shelley</u>, 2013 WL 4584649, at *6; <u>cf.</u> <u>Goodson</u>, — F. App'x —, slip op. at 15 (affirming summary judgment for debt collector where "letter did not make an express demand for payment," although it was "sent by a debt collector . . . and stated the balance owed").

Courts are careful to note that "the absence of a demand for payment is just one of several

arguing its "true purpose."

factors that come into play in the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt." Gburek, 614 F.3d at 385; Grden, 643 F.3d at 173. In this case, the lack of an express statement in the 2013 Letter either demanding payment from Plaintiff or telling him how much he owed points in the direction of finding that the least sophisticated consumer would not view the letter as an attempt to collect a debt.

Although he does not point to an express statement, Plaintiff argues that the 2013 Letter could be construed by the least sophisticated consumer as a demand for immediate payment. He relies on the information on the reverse side informing him where to "**MAIL PAYMENTS**" and the language informing Colorado residents where to send "**[a]ll payments made via mail**." (DE 24 at 8-9, 10 n.6, 12) (emphasis in letter). District courts have consistently held that communications are not "in connection with the collection of any debt" simply because they inform the recipient where to send payments. For example, in Hart v. FCI Lender Services, the district court considered a letter from a loan servicer that stated, "Beginning June 28, 2012 you should mail your payments, including all past due payments, to FCI Loan Services, Inc. at the address indicated below." Hart, 2014 WL 198337, at *2 (footnote omitted). Because the letter was received after June 28, 2012, such payments were currently due.[5] Id.

Although the letter directed the debtor to presently "mail . . . payments" to a provided address, the court held that the letter was not debt collection activity and dismissed the debtor's

---

[5] Plaintiff contends that the 2013 Letter was an attempt to collect a debt because it "directed Plaintiff—in the present tense—where to send payments." (DE 24 at 10 n.6.). The court in Hart addressed just that situation—language telling the recipient where he should currently "mail . . . payments"—and concluded that it was not an attempt to induce the recipient to make a payment. Hart, 2014 WL 198337, at *2.

complaint with prejudice: "Significantly, the [transfer-of-servicing] letter did not attempt to induce Plaintiff to make payment, but rather, it assumes that he will be making payments and directs where he should send them."  Id. at *6 (emphasis in original).  Other courts are in agreement.  See, e.g., Olson v. Midland Funding, LLC, No. CIV. CCB-13-1882, 2013 WL 6717480, at *6 (D. Md. Dec. 18, 2013) (dismissing complaint because communication was not in connection with debt collection, as "Make a Payment" link on website merely offered "opportunity to pay" and was "not a demand or inducement to pay an overdue debt"); aff'd, 578 F. App'x 248, 251 (4th Cir. 2014) (unpublished) ("The website link provided in the communication does not transform the privacy notice into an attempt to induce payment."); Shelley, 2013 WL 4584649, at *6 (dismissing complaint because communication was not in connection with debt collection despite fact that it "provide[d] where future payments should be sent"); Thompson v. BAC Home Loans Servicing, L.P., No. 2:09-CV-311-TS, 2010 WL 1286747, at *3 (N.D. Ind. Mar. 26, 2010) (dismissing complaint because communication was not sent in connection with debt collection, despite fact that communication "provide[d] the payment remittance address of the new servicer (the Defendant), as well as payment instructions, [and] a payment coupon with the amount due").

Notably, Plaintiff does not direct the Court to a case where the inclusion of an address to "mail payments" factored into a determination that a communication was sent in connection with the collection of a debt.  Nor does Plaintiff engage in the commonsense inquiry of how the provision of an address where payments "should be sent" would induce the least sophisticated consumer to send an immediate payment, or how much of a payment the least sophisticated consumer would feel compelled to send given that the letter did not discuss a balance due.

Viewed objectively, the phrase "mail payments" on the reverse of the 2013 Letter was not a demand to pay an unspecified amount on the purported debt.  The fact that the 2013 Letter did not include a demand for payment or state a balance due factors in favor of finding that the least sophisticated consumer would not view it as an attempt to collect a debt.

### 3.      A Stated Attempt to Collect a Debt or Threatened Consequences

The 2013 Letter did not state that it was an attempt to collect a debt; it stated the opposite: "this is not an attempt to collect a debt."  (DE 1-1 at 3).  The letter did not state that Plaintiff's purported account was in default, and it did not threaten consequences if Plaintiff failed to send an immediate payment.  In fact, it let him know that collection efforts would not begin "for at least 30 days."  (Id. at 2).

Taken at face value, these statements (or lack of statements) indicate that the 2013 Letter was not sent in connection with the collection of a debt.  See, e.g., Hernandez, 2015 WL 2094263, at *2 (dismissing claim with prejudice where "letter expressly stated that it was not an attempt to collect a debt"); Hart, 2014 WL 198337, at *2 (dismissing complaint with prejudice where letter did not "indicate that the loan was in default," despite the fact that it did state "this is an attempt to collect upon a debt"); Kelley v. Nationstar Mortgage, LLC, No. 3:13-CV-00311, 2013 WL 5874704, at *4 (E.D. Va. Oct. 31, 2013) (dismissing complaint where letter did not "mention [plaintiff's] default, did not attempt to collect late fees or missed payments, and did not threaten any enforcement proceedings"); Parker, 874 F. Supp. 2d at 1359 (dismissing complaint and noting that a letter "that merely informs a debtor of the assignment of her debt, provides the debtor with the new information, and clearly states that the letter is not an attempt to collect a debt should stand as an example of a letter that does not constitute a communication in

connection with the collection of a debt"); <u>Thompson</u>, 2010 WL 1286747, at *4 (dismissing complaint where letter did not "address the status of the Plaintiff's home mortgage loan, declare that it is in default, or demand any payment pursuant to such default," despite the fact that letter did state "that this communication is from a debt collector attempting to collect a debt").

Although he does not contest that the 2013 Letter (1) did not state that it was an attempt to collect a debt, (2) did not state that the purported account was in default, and (3) did not threaten consequences without an immediate payment, Plaintiff argues that the statement that "this is not an attempt to collect a debt" is "self-serving," "contradictory," and should therefore be rejected. (DE 24 at 12). To demonstrate that statement's contradictory nature, Plaintiff relies on the italicized language on the front of the 2013 Letter:[6]

> *Federal law prohibits certain methods of debt collection, and*
> *requires that we treat you fairly . . . .*
>
> *If you have a complaint about the way we are collecting this debt,*
> *please [contact us].*
>
> *The Federal Trade Commission enforces the Fair Debt Collection*
> *Practices Act (FDCPA). If you have a complaint about the way we*
> *are collecting your debt, please contact the FTC . . . .*

(DE 24 at 12; DE 1-1 at 2). Elsewhere, Plaintiff argues that the very mention of "the protections afforded by the FDCPA" precludes Defendants from arguing that the 2013 Letter was not an

---

[6] Plaintiff also argues that the statement conflicts with the information that follows it "regarding how and where Plaintiff should mail payment." (DE 24 at 12). As discussed above, the mere provision of an address where to "mail payment" does not equate with an attempt to collect a debt. There is no conflict in stating that a communication is "not an attempt to collect a debt" and providing an address where payments may be mailed. <u>See</u> <u>Olson</u>, 2013 WL 6717480, at *6 (providing "opportunity to pay" does not equate to "demand or inducement to pay").

14

attempt to collect a debt.  (DE 24 at 15).[7]

"The [FDCPA] does not apply to <u>every</u> communication between a debt collector and a debtor."  <u>Gburek</u>, 614 F.3d at 384-85 (emphasis in original).  In that regard, courts have held that the inclusion of an FDCPA "notice cannot expand the scope of the FDCPA, causing it to apply to things to which it otherwise would not apply."  <u>Rosado v. Taylor</u>, 324 F. Supp. 2d 917, 925 n.4 (N.D. Ind. 2004); <u>see also</u> <u>Maynard v. Cannon</u>, 401 F. App'x 389, 395 (10th Cir. 2010) (unpublished) (inclusion of an "FDCPA notice is legally irrelevant" as "the language of the notice does not inevitably lead to the conclusion that [communications] were FDCPA-covered debt collection activity").  Plaintiff seems to acknowledge as much by citing this principle from <u>Gburek</u>.  (DE 24 at 12) (FDCPA disclaimer "does not automatically trigger the protections of the FDCPA").

In <u>Goodson v. Bank of America, N.A.</u>, the Sixth Circuit considered whether the inclusion of an FDCPA notice rendered a transfer-of-servicing letter an attempt to collect a debt.  The letter stated the following:

> Under the federal Fair Debt Collections Practices Act and certain state laws, Bank of America, N.A. is considered a debt collector. As a result, we are sending you the enclosed Fair Debt Collection Practices Act Notice containing important information about your loan and your rights under applicable federal and state law . . . .

<u>Goodson</u>, — F. App'x —, slip op. at 14.  The letter then tracked the notice requirements of § 1692g and stated the following, in bold:

> Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.

---

[7]  Plaintiff cites no legal authority for this contention.  (DE 24 at 15).

15

> Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt.

Id.

To be sure, the letter (1) twice referred to the sender as a "debt collector," (2) twice referred to the FDCPA, (3) referred to the recipient's "rights under" the FDCPA, (4) and stated unequivocally, in bold, that the sender was "attempting to collect a debt" from the recipient. The Sixth Circuit held that the letter was not actionable under the FDCPA and affirmed summary judgment for the sender. Id. at 15-16. Despite the contrary language in the disclaimer, the court held that the letter was not "an attempt to collect a debt" based on several factors: the animating purpose of the letter was to inform the recipient of the change in loan servicer; the letter lacked an express demand for payment; the letter did not threaten consequences for failure to pay; and the letter did not mention an outstanding balance. Id. at 14-15. The mere fact that the sender was "trying to conform to FDCPA requirements" by providing a disclaimer and § 1692g disclosures did "not automatically transform an otherwise informational letter into a debt collection activity." Id. at 16.

In the same vein, the fact that the 2013 Letter referred to Defendant MCM as a "debt collector," referenced Plaintiff's rights under the FDCPA, and informed Plaintiff that he could register a "complaint about the way we are collecting you debt" does not transform what is otherwise an informational letter regarding the assignment of a debt into an attempt to collect a debt. Courts' disregard of present tense language stating that a communication "is an attempt to collect your debt" compels the conclusion that significant weight should not be given to the

16

italicized phrase in the 2013 Letter that Defendants "are collecting your debt," absent other

indicia that the letter was itself a collection attempt.  See Gburek, 614 F.3d at 382; Maynard, 401

F. App'x at 392; Hart, 2014 WL 198337, at *2.

       In that regard, Plaintiff's reliance on Donnelly-Tovar v. Select Portfolio Servings, Inc.,

945 F. Supp. 2d 1037 (D. Neb. 2013), is misplaced.  In that case, the district court described the

communication at issue as follows:

> [The plaintiff] later received correspondence from the defendant
> offering to release a secured lien on the property at issue for
> payment in the amount of $23,891.72, which was less than the total
> amount of $59,729.31 secured by the lien.  She alleges the
> December 28, 2011, letter was the initial communication from [the
> defendant.] . . .
>
> In the letter quoted in and attached to the complaint, [the
> defendant] proposes that the payment will effect "a full and
> complete satisfaction of the lien on the property," noting that the
> "total amount secured by the lien is $59,729.31."  Further, the
> letter sets out detailed payment instructions . . . . The letter states
> "[t]his information is for informational purposes only and is not
> considered an attempt to collect a debt."

Id. at 1041 (internal citations omitted).

       The court was not persuaded by the final disclaimer: the "disclaimer stating that the letter

'is not an attempt to collect a debt,' does not make that true, especially in view of indications on

the face of the document that the communication is intended to obtain money and is connected to

a present or former obligation to pay an indebtedness."  Id. at 1048 (emphasis added).  In

concluding that the letter was an attempt to collect a debt, the court found it significant that the

letter "clearly asks for money . . . . [and] implies that payment is obliged, since it asks for

payment of money."  Id. at 1047.  Indeed, the "letter clearly asks for a substantial amount of

money."  <u>Id.</u> at 1048.  "From the language of the letter," the court found that the sender's "purpose was not to enforce a security interest, but an attempt to collect the underlying loan debt."  <u>Id.</u> at 1047.

Like the letter at issue in <u>Donnelly-Tovar</u>, the 2013 Letter stated that it was "not an attempt to collect a debt."  The appreciable similarities end there.  The 2013 Letter did not state the amount of Plaintiff's purported debt, offer to accept a lesser amount in "full and complete satisfaction" of that debt, or ask for the payment of money.  Rather than contradicting the content of the 2013 Letter, the statement that "this is not an attempt to collect a debt" is another objective indicator that the least sophisticated consumer, reading the entire letter, would not believe that it was sent in connection with an attempt to collect payment on a debt.

### 4.  Nature of Relationship of the Parties

Plaintiff argues that "the relationship between the parties—that of a debt collector and debt buyer, on the one hand, and a consumer on the other—further suggests that the communication was made in connection with the collection of a debt, as there is no other reason for Defendants to contact Plaintiff."  (De 24 at 9).  Elsewhere he argues that the nature of this relationship raises unspecified "concerns" because Defendant "Midland Funding—a debt buyer—purchased the debt at issue for pennies on the dollar and had no prior relationship with Plaintiff."  (<u>Id.</u> at 13 n.8).  Defendants do not deny that they are debt collectors who had no relationship with Plaintiff prior to acquiring his purported debt and sending him an initial communication.

As mentioned, the FDCPA "does not apply to <u>every</u> communication between a debt collector and a debtor."  <u>Gburek</u>, 614 F.3d at 384-85 (emphasis in original).  Therefore, courts

have held that, although the nature of the parties' relationship is one factor to consider, the fact that the parties share a debt collector–debtor relationship alone is not sufficient to state a claim under the FDCPA.  For example, in <u>Olson</u>, the Fourth Circuit held that, "[w]hile the only relationship between Olson and MCM was that of a debtor and debt collector, this relationship alone is not sufficient to plausibly assert that a communication devoid of any reference to Olson's outstanding debt is made in connection with an attempt to collect the debt." <u>Olson</u> 578 F. App'x at 251 (affirming dismissal); <u>see also Olson</u>, 2013 WL 6717480, at *5 (to hold that communication is debt collection activity "on the basis of the relationship alone, would mean any time a debt collector communicated with a debtor the communication would be subject to regulation under the FDCPA, an outcome not contemplated by the statute").  In <u>Goodson</u>, the Sixth Circuit held that a newly formed debt collector–debtor relationship did not take precedence over factors indicating that a communication was not an attempt to collect a debt: "Though the letter was sent by a debt collector who had had no relationship with Goodson prior to her default, and stated the balance owed as of June 30, 2011, the factors in favor of finding that it had been sent in connection with a debt collection activity end there." <u>Goodson</u>, — F. App'x —, slip op. at 15 (affirming summary judgment for debt collector).

Although the 2013 Letter was sent by debt collectors regarding a newly-acquired debt, this factor alone does not demonstrate that the least sophisticated consumer would perceive the 2013 Letter to be an attempt to collect a debt, particularly where the letter did not discuss an outstanding balance or make an express demand for payment.

Plaintiff argues that the relationship is different in this case because Defendant Midland is a "debt buyer" who "purchased the debt at issue for pennies on the dollar."  (DE 24 at 13 n.8).

Plaintiff does not explain how the least sophisticated consumer, after reading the 2013 Letter, would be aware that Defendant acquired his debt in this "concerning" manner, or how the existence of this particular relationship would cause the least sophisticated consumer to believe that a letter from that debt buyer was an attempt to collect a debt.

The 2013 Letter states that Defendant Midland "is the new owner" of the referenced account.  (DE 1-1 at 2).  The letter does not indicate that the purported debt was acquired in default, that it had been written off by the original creditor, or that Defendants were seeking to collect the entire debt (it does not discuss the amount they were seeking to collect at all).  Cf. Donnelly-Tovar, 945 F. Supp. 22 at 1048 n.3.  It is recognized that a "debt buyer" may be considered a "debt collector" under the FDCPA when it "seeks to collect on a debt" because, unlike the debt's original owner, it "has no ongoing relationship with the debtor and, therefore, no incentive to engender good will by treating the debtor with honesty and respect."  Ruth v. Triumph P'ships, 577 F.3d 790, 797 (7th Cir. 2009) (emphasis added).  However, "[t]o the extent that a debt buyer is not engaged in collection activities, it is no different that the initial creditor in its relationship to the debtor."  Aker v. Bureaus Inv. Grp., No. 12 C 03633, 2014 WL 4815366, at *3 (N.D. Ill. Sept. 29, 2014).  Plaintiff does not identify a case where the fact that a communication came from a "debt buyer"—or the debt's "new owner"—was found to factor into the determination of whether the debt buyer was engaged in collection activities.

In sum, the Court concludes that the least sophisticated consumer, possessing a rudimentary amount of information and a willingness to read a notice with some care, would not conclude that the 2013 Letter was sent in connection with the collection of a debt.  Its animating

purpose was to inform Plaintiff of the assignment of the purported debt to Defendant Midland, and that servicing would fall to Defendant MCM.  "Although ensuring payment of the debt cannot be denied as the Defendant[s'] ultimate goal, the [2013 Letter] itself did not provide terms of payment or deadlines, threaten future collection proceedings, or demand payment in any form."  Kelley, 2013 WL 5874704, at *4 (quoting Thompson, 2010 WL 1286747, at *4).  The relationship of the parties alone—that of a debt buyer and debt collector with no prior relationship with Plaintiff—does not outweigh the factors indicating that the 2013 Letter was not an attempt to collect on the debt.

This commonsense inquiry takes into account the language in the 2013 Letter stating that Defendants are "debt collection" companies engaged in "debt collection," advising Plaintiff that he may "complain[] about the way we are collecting your debt," and indicating where Plaintiff may "mail payments."  (DE 1-1 at 2-3).  Reading these statements exclusively and in isolation (see DE 24 at 8), might support an inference that the least sophisticated consumer would believe that Defendants were attempting to collect a debt by sending him the 2013 Letter.  This is not the proper objective inquiry:

> The least sophisticated debtor is explicitly not the least
> sophisticated, selectively-reading debtor—even the least
> sophisticated debtor must read the entire notice.  We do not
> evaluate sentences contained in collection letters in a vacuum, but
> rather evaluate language and formatting choices in the context of
> the entire notice.

Szczurek v. Prof'l Mgmt., Inc.,— F. Supp. 3d —, 2014 WL 6388484, at *5 (E.D. Pa. Nov. 17, 2014) (dismissing complaint).  Accordingly, "no one part" of a notice, "such as the debt collector language, should be read in isolation."  Myers v. Asset Acceptance LLC, 750 F. Supp. 2d 864,

870 (S.D. Ohio 2010) aff'd, 472 F. App'x 395 (6th Cir. 2012).  Considering the 2013 Letter in its proper context, the references to "collecting this debt" and the provision of mailing addresses would not lead the least sophisticated consumer to believe that the 2013 Letter was a demand for payment on a delinquent debt, particularly considering the absence of an express demand or indication of an amount owed.

Accordingly, as the 2013 Letter was not sent "in connection with the collection of any debt," it was not an initial communication subject to the debt-validation disclosure requirements of § 1692g.  Therefore, Count I, and the portions of Counts II and III that rely on the 2013 Letter,[8] fail to state a claim.  Because the Court concludes that amendment would be futile, these claims shall be dismissed with prejudice.[9]

**B.**       **Whether Debt Validation is a Prerequisite to Suit**

Counts II and III concern the 2014 Letter, and there is no dispute that it was sent in connection with the collection of a debt.  Plaintiff alleges that the 2014 Letter violated §§ 1692e(2)(A) and 1692e(10) of the FDCPA by falsely representing that he owed a $3,603.35 debt, which Plaintiff claims never existed.  Defendants argue that Plaintiff was required to

---

[8]  Section 1692e likewise relies on a finding that false or misleading representations were made "in connection with the collection of any debt."  15 U.S.C. § 1692e.

[9]  As highlighted throughout this order, district courts often decide whether a communication is debt collection activity under the least sophisticated consumer standard on motions to dismiss.  See, e.g., Hernandez, 2015 WL 2094263, at *3 (dismissal with prejudice); Olson, 578 F. App'x at 251; Hart, 2014 WL 198337, at *7 (dismissal with prejudice); Kelley, 2013 WL 5874704, at *4; Parker, 874 F. Supp. 2d at 1359 (dismissal with prejudice); Thompson, 2010 WL 1286747, at *5 (N.D. Ind. Mar. 26, 2010).  To the extent that Plaintiff argues that discovery of additional facts will demonstrate that he states a claim (see DE 24 at 10 n.7), Plaintiff does not cite a case in which such facts (subsequent communications from debtors) were found to determine whether a plaintiff adequately plead the existence of an "initial communication . . . in connection with the collection of any debt," 15 U.S.C. § 1692g.

challenge the validity of that debt under the procedural framework of § 1692g(a)(3) before filing

suit for alleged false representations under § 1692e.

At least one district court has followed Defendants' suggestion, holding that a "consumer

cannot circumvent the [FDCPA's] procedural device to dispute the validity of a debt by filing an

action pursuant to § 1692e on the sole basis that the debt is invalid." Carpenter v. RJM

Acquisitions, LLC, 787 F. Supp. 2d 971, 974-75 (D. Minn. 2011).  However, this holding was

rejected by a district court in same district, see Eide v. Colltech, Inc., 987 F. Supp. 2d 951, 961

n.6 (D. Minn. 2013), and conflicts with the holdings of the Courts of Appeals that have

considered the issue, Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 392 (4th Cir.

2014); McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 247 (3d Cir. 2014).

The Court adopts the well-reasoned analysis of the Courts of Appeals.  "Nothing in the

text of the FDCPA suggests that a debtor's ability to state a claim under § 1692e is dependent

upon the debtor first disputing the validity of the debt in accordance with § 1692g." Russell, 763

F.3d at 392.  "The language of § 1692g indicates that disputing a debt is optional.  The statute

lists consequences '[i]f the consumer' disputes a debt, 15 U.S.C. § 1692g(b)12 (emphasis added),

and it makes clear that failure to dispute a debt cannot be construed as an admission of liability.

15 U.S.C. § 1692g(c). . . . The absence of a pre-suit validation request requirement does not

appear accidental given the protection Congress bestowed on those who opt not to seek

validation of the debt." McLaughlin, 756 F.3d at 247.

Accordingly, Plaintiff was not required to challenge the validity of the purported debt

before suing under § 1692e.[10]  Counts II and III therefore state claims under § 1692e for allegedly false statements within the 2014 Letter.

### III.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiff's Class Action Complaint (DE 19) is **GRANTED IN PART AND DENIED IN PART**: it is **GRANTED** to the extent that Count I is **DISMISSED WITH PREJUDICE**; it is **DENIED** in all other respects.

**DONE AND ORDERED** in chambers at West palm Beach, Palm Beach County, Florida, this 20th day of May, 2015.

_____
KENNETH A. MARRA
United States District Judge

---

[10]  Although he does not plead it in his complaint, Plaintiff argues that he did dispute the validity of the debt with Defendants.  (DE 24 at 17).  If the Court concluded that such an allegation was necessary to state a claim, leave would be given to amend to allege that fact.

24